R. D. Fageol Company v. Commissioner.
R. D. Fageol Co. v. Commissioner
Docket No. 74208.
United States Tax Court
T.C. Memo 1961-178; 1961 Tax Ct. Memo LEXIS 169; 20 T.C.M. (CCH) 904; T.C.M. (RIA) 61178; June 16, 1961
*169 John R. Dykema, Esq., for the petitioner. Vernon R. Balmes, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in petitioner's income tax for the taxable years ended March 31, 1953 and March 31, 1954, in the respective amounts of $40,063.22 and $716.56. Among the several adjustments made by respondent, the sole item contested by petitioner is the partial disallowance of a bad debt deduction to the extent of $31,453.89 in fiscal 1954. Findings of Fact The stipulated facts are hereby found accordingly. Petitioner is an Ohio corporation with its principal place of business in Kent, Ohio. It has consistently kept its books and prepared its income tax returns on the basis of a fiscal year ending March 31, and on an accrual method of accounting. It filed its Federal income tax return for the taxable year ended March 31, 1953 with the district director of internal revenue at Detroit, Michigan, and for the taxable years ended March 31, 1954 and March 31, 1955, with the district director of internal revenue, Cleveland, Ohio. Prior to March 31, 1954, petitioner was the holder of three unsecured notes *170 of Fageol Heat Machine Co., hereinafter called Machine, in the aggregate face amount of $75,000. As of that date, the amount due and owing on account thereof was $76,853.69. On March 31, 1954, F. R. Fageol, a stockholder and chairman of the board of both petitioner and Machine, was the holder of four promissory notes payable by Machine in the aggregate face amount of $110,000, secured by chattel mortgages on its inventory of heat machines. No payment had been made by Machine to Fageol on these notes. On March 31, 1954, Fageol made the following offer to petitioner: As an inducement to [petitioner] to purchase the assets and assume the liabilities of [Machine], with exception of its liabilities to holders of its 6 per cent debenture notes, and to further induce them to sell through their regular sales channels the above enumerated inventory, I agree to make the following concessions: a. I agree to waive repayment of $10,000, and to waive all accrued and future interest in connection with my note; the [petitioner] to also waive all accrued and future interest on its note. b. I hereby authorize [petitioner] to sell such inventory on a basis substantially in accordance *171 with the memorandum which is attached hereto and made a part hereof, and which indicates that the net receipts from the sale of the foregoing enumerated inventory should be approximately $176,000.00. c. From the proceeds of said sale, I authorize [petitioner] to withdraw proratably an amount equal to its $75,000 purchase price for the inventory in comparison to my $100,000 claim until such time as all of the aforementioned inventory has been disposed of. d. In the event $100,000 is not repaid to me from the liquidation of the aforesaid inventory, I shall be repaid from 80 per cent of the profits of the Heat Machine Division of [petitioner]. Petitioner accepted this offer and on the same day executed an agreement with Machine embodying the terms of the sale. Petitioner took over all the assets of Machine, assumed all the liabilities, with the exception of Machine's liability to the holders of its 6 percent debenture notes, and was assigned all rights under a license of Machine. The inventory consisted of 773 machines, carried on Machine's books at approximately $120,000. Petitioner proceeded to carry them on its books at the same figure. This figure represented the cost of *172 the items and was not calculated on a lower of cost or market basis. It was not intended to have any relation to fair market value. In conjunction with the agreement of March 31, 1954, Fageol, and H. W. Fagert, who was president of petitioner and Machine, prepared the following memorandum estimating the net proceeds from the sale of the inventory: FAGEOL HEAT MACHINE CO.
INVENTORY
1. VO Heat Machines
250 Units - Initial cost each
$ 186.35
Present cost including carry-
ing charges
[blank]
2. PW Heat Machines
523 Units - Initial cost each
136.64
Present cost including carry-
ing charges
[blank]
PW Units: List price of PW
$395.00
Less discount of 20-10-2%
278.72
Less special extra 10% dis-
count
250.85
Allow [petitioner] 16%
sales cost off above -
$40.13 - or net income of
210.72
Net income per PW x 523 units
110,206.56
VO Units: List price of VO
$495.00
Less discount of 20-10-2%
349.28
Less special extra 10% dis-
count
314.36
Allow [petitioner] 16%
sales cost off above -
$50.30 - or net income of
264.06
Net income per VO x 250 units
66,015.00
Total
$176,221.56 There was no appraisal of the inventory. *173 After a vigorous sales effort, petitioner liquidated the entire inventory. Initially, the sales were made in accordance with the estimated prices and petitioner realized approximately $60,000 to $65,000 on the sale of the first 160 machines. Thereafter, the market for the machines diminished, and in June 1956, petitioner liquidated the entire remaining stock, 600 machines, for a lump sum of $30,000. Machine's obligation to Fageol was carried on the books of petitioner as notes payable in the amount of $100,000. Petitioner received the proceeds from the sale of inventory and allocated approximately 57.1 percent to Fageol in accordance with the agreement. As a result of the smaller amount realized on the sale of the goods, Fageol was paid considerably less than $100,000. He never received anything additional. The debt was still carried on the books of petitioner and was never written off. Petitioner claimed a bad debt deduction in its return for the taxable year ended March 31, 1954 in the amount of $53,924.35, computed as follows: Indebtedness due petitioner
$76,853.69
Assets received
$125,902.41
Liabilities assumed
102,973.07
Net assets received
22,929.34
Bad debt loss
$53,924.35
*174 Respondent determined that petitioner suffered a bad debt of $22,470.46 during the taxable year ended March 31, 1954, and disallowed the remaining $31,453.89. The effect of the disallowance was to convert the claimed net operating loss for fiscal 1954 into taxable income in the amount of $2,388.53 and to eliminate any net operating loss carryback to fiscal 1953. Opinion There appears to be no dispute that the indebtedness owed petitioner was a bad debt or that it became worthless in 1954. The single controversy is the amount of deduction to which petitioner is entitled. This issue, however, has two elements: first, the gross fair market value of property which petitioner concededly received in satisfaction of the debt; and second, what, if any, offsetting obligations were assumed to acquire these assets; thus establishing the net fair market value of the property received on account of the debt. As to the fair market value of the property received, it is conceivable that a record might have been made from which the existence of a limited market for the heat machines could be inferred as of the date of the settlement agreement. It might then have been possible to recognize the *175 immediate existence of a thin market in which the total sales proceeds would not equal the price of one unit multiplied by the number of units. See, e.g., , affd. (C.A. 4, 1938); ; , affd. (C.A. 7, 1940), certiorari denied . There is here, however, no evidence from which we can make any finding that as of the date when the property was received in settlement of the debt, or even as of the end of the current fiscal year, its fair market value was less than that determined by respondent. The weakness of petitioner's case lies not so much in the value apparently attributed to the machines by the parties, as in the presumption of correctness of respondent's determination and the complete absence of any evidence of value as of the date of settlement. Any finding looking in that direction would be the merest speculation and one in which we do not feel warranted in engaging. There is *176 not even any satisfactory proof that petitioner did not receive other property from the debtor in addition to the machines. Since respondent has allowed a large proportion of the debt as worthless, and since the value of the property received in computing this allowance was determined without deduction for any assumed liabilities, we find it unnecessary to consider the second aspect of the question, advanced by respondent as an alternative, that the net value of the assets was even greater because of the ineffectiveness of the assumption of indebtedness. Decision will be entered for the respondent.